NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar No. 13644
DANIEL R. SCHIESS
Assistant United States Attorney
Nevada Bar No. 5483
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336
dan.schiess@usdoj.gov

*Representing the United States of America*



# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| **United States of America,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**Kelvin Atkinson,**<br><br>　　　　　Defendant. | CASE NO.　2:19-cr-00055-JCM-CWH<br><br>**Plea Agreement** |

The United States, by and through Nicholas A. Trutanich, United States Attorney, Daniel R. Schiess, Assistant United States Attorney, the defendant, Kelvin Atkinson ("Atkinson" or "defendant"), and his attorney, Richard A. Wright, submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

## I.　SCOPE OF AGREEMENT

The parties to this Plea Agreement are the United States of America and Kelvin Atkinson. This Plea Agreement binds the defendant and the United States Attorney's Office

1

for the District of Nevada ("USAO"). It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, and restitution. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II.   DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A.   <u>Guilty Plea</u>. The defendant knowingly and voluntarily agrees to plead guilty to one count of a criminal information charging him with wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   <u>Waiver of Trial Rights</u>. The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all defendants by the laws and the Constitution of the United States. Specifically, the defendant is giving up:

1. The right to indictment by a grand jury and to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2. The right to confront the witnesses against the defendant at such a trial, and to cross examine them;

3. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4. The right to testify in his own defense at such a trial if he so chooses;

5. The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

      6.    The right to have the assistance of an attorney at all stages of such proceedings.

    C.    <u>Withdrawal of Guilty Plea</u>.  The defendant will not seek to withdraw his guilty plea after he has entered it in court.

    D.    <u>Additional Charges</u>.  The United States agrees not to bring any additional charges against the defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States, except that the United States reserves the right to prosecute the defendant for any crime of violence as defined by 18 U.S.C. § 16.

## III.    ELEMENTS OF THE OFFENSE

    A.    The elements of wire fraud are the following:

    1.    the defendant devised and intended to devise a scheme or plan to defraud or for obtaining money and property by means of false and fraudulent pretenses, representations, and promises;

    2.    the statements made as part of the scheme or plan were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money and property;

    3.    the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

    4.    the defendant used, or caused to be used, an interstate wire communication to carry out an essential part of the scheme or plan.

*See* Ninth Circuit Manual of Model Jury Instructions, Criminal 8.121 (2010 ed.).

## IV. FACTS SUPPORTING GUILTY PLEA

A.   The defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

B.   The defendant acknowledges that if he had elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

C.   The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D.   The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

**The Scheme and Artifice**

1.   From at least as early as January 1, 2010, to on or about December 31, 2017, Atkinson devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and material omissions. The objective of scheme and artifice was for Atkinson to falsely and fraudulently induce donors to contribute to his campaign by claiming that he would use the donations for lawful campaign purposes, knowing that he would use donations for his own personal use. Atkinson knew it was a violation of state law to use campaign contributions for personal use. *See* Nevada Revised Statute 294A.160.1.

**Atkinson is an elected public official and had a duty to file C&E Reports.**

2. Atkinson serves as a Nevada State Senator representing District 4. He was elected to the Nevada State Senate in November 2012, having previously served in the Nevada State Assembly since November 2002.

3. Nevada law requires each elected official and candidate running for office to file Contribution and Expense Reports ("C&E Reports") detailing the campaign's contributions and expenses. NRS 294A.120 and 294A.200. During an election year, candidates must file periodic C&E Reports, and elected officials must file annual C&E Reports during non-election years. *Id.* The Nevada Secretary of State's office posts the C&E Reports on its public website.

4. Candidates and elected officials must file the C&E Reports online through the Nevada Secretary of State's database using a unique username and password. Although campaign staff members may file C&E Reports for the candidate or elected official, candidates and elected officials must affirm under oath that the information in the C&E Reports is true and accurate. They must also acknowledge they understand that they could be criminally prosecuted for knowingly making false statements on their C&E Reports.

5. From 2010 to early 2018, Atkinson filed eighteen C&E Reports covering the period of January 1, 2010, through December 31, 2017. Atkinson affirmed on each Report that the information in the Reports was true and correct, and he acknowledged that he understood that he could be prosecuted for making false statements.

**Atkinson used campaign contributions for his personal use.**

6. Between January 1, 2010, and December 31, 2017, Atkinson deposited $1,206,166.72 into his campaign bank account ("Campaign Account"). During that period, he reported on his C&E Reports that he had received $1,113,066.96 in contributions. During that same period, he commingled funds in his Campaign Account, knowing state law prohibited commingling. The commingling likely included $80,234.09 in personal funds, the difference between his deposits and reported contributions.

7. During the same period, Atkinson withdrew $1,218,212.38 from his Campaign Account while reporting only $764,268.03 in campaign expenses. The difference between the withdrawals and reported expenses is $453,944.35. Atkinson did not report this amount as campaign expenses.

8. Atkinson used a substantial portion of the unreported withdrawals for personal use and not for legitimate campaign purposes. The manner in which he withdrew the money, how he spent the money, where he spent it, the age of certain transactions, and his failure to keep adequate records, make Atkinson's precise fraud amount presently indiscernible. But Atkinson admits that he spent at least $249,900 of the unreported withdrawals on personal expenses and not for legitimate campaign purposes.

9. Nonetheless, some of Atkinson's impermissible personal expenditures have been identified. They include at least $100,000 to pay personal credit cards for personal expenses, at least $75,000 to open and operate a Las Vegas night club, $20,000 to lease a 2018 Jaguar automobile, and approximately $8,600 to repay a personal loan, among other personal expenditures.

**Atkinson misrepresented to campaign donors that he would use their donations for lawful purposes.**

10. For years, Atkinson made materially false and fraudulent representations and omissions to potential campaign donors that caused them to donate to his campaigns. Through his false representations and omissions, Atkinson misled donors to believe he would use their contributions for lawful campaign purposes, when he knew he would use some contributions for his personal expenses. Atkinson's C&E Reports reflect that from January 1, 2010, to December 31, 2017, he received 848 contributions from individuals and businesses. Atkinson knew that donors would not have contributed to his campaigns had they known he intended to use – and was using – donations for unlawful purposes.

**Atkinson used interstate wire communications for purpose of executing his scheme.**

11. In May 2016, Atkinson paid a business consultant using campaign funds to help him obtain a business license(s) for a Las Vegas nightclub he intended to open. On May 9 and 10, 2016, Atkinson paid the consultant using PayPal, an electronic payment system. The electronic payments occurred in interstate commerce because they were originated in Nevada and terminated out of state. Atkinson made the payments for the purpose of executing the scheme and artifice to defraud.

12. On August 2017, Atkinson leased a 2018 Jaguar F-Pace SUV and paid $25,000 toward the lease, charging $20,000 of the payment to two personal American Express credit cards. On September 18, 2017, September 22, 2017, and October 19, 2017, Atkinson made payments totaling $18,703.24 from campaign funds to his American

7

Express credit cards, using American Express's electronic bill pay system. The electronic payments occurred in interstate commerce because the payments originated in Nevada and terminated in Arizona. Atkinson made the payments for the purpose of executing the scheme and artifice to defraud.

## V.   COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant does not plead guilty or withdraws his guilty pleas, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf. The defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI.   APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A.   <u>Discretionary Nature of Sentencing Guidelines</u>. The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B.   <u>Offense Level Calculations</u>. The parties stipulate to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions:

| | |
|---|---|
| Base Offense Level (USSG § 2B1.1(a)(1)): | 7 |
| Loss Amount: $150,000-$250,000 (USSG § 2B1.1(b)(1)(F): | 10 |
| Abuse of Position of Trust (USSG § 3B1.3) | 2 |
| Acceptance of Responsibility | (2) or (3) |
| Total | 17 or 16 |

The defendant and the USAO dispute the applicability of the two-level enhancement for 10 or more victims under U.S.S.G. § 2B1.1(b)(2)(A). At sentencing, the United States reserves the right to argue a proper guidelines calculation includes the two-level enhancement because the case involves 10 or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(A). The defendant reserves the right to argue that the enhancement does not apply.

Notwithstanding the parties' stipulation that the Sentencing Guidelines' offense level should be calculated under § 2B1.1, the defendant reserves the right to argue that the offense level should be calculated under § 2C1.8 (pursuant to § 2B1.1 Cross Reference § 2B1.1(c)(3)), and the United States reserves the right to argue otherwise. If the defendant argues that § 2C1.8 applies, he agrees to argue the Base Offense Level is 8 (§ 2B1.1(a)(1)); the increase for the value of the illegal transactions is 10 (§ 2C1.8(b)(1) and § 2B1.1((b)(1)(F)); and an additional 2-level applies because he engaged in 30 or more illegal transactions (§ 2C1.8(b)(4)).

The defendant acknowledges that the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

C. <u>Reduction of Offense Level for Acceptance of Responsibility</u>. Under USSG § 3E1.1(a), the United States will recommend the defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (I) violates the conditions of pretrial release.

Under USSG § 3E1.1(b), the Court determines that the defendant's total offense level before operation of § 3E1.1(a) is 16 or higher, and if the United States recommends a two-level downward adjustment pursuant to the preceding paragraph, the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the Defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

D. <u>Criminal History Category</u>. The defendant acknowledges that the Court may base his sentence in part on the defendant's criminal record or criminal history. Defendant understands that there is no agreement as to defendant's criminal history or

criminal history category. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

E.  Relevant Conduct.  The Court may consider all relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F.  Additional Sentencing Information.  The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

## VII.  APPLICATION OF SENTENCING STATUTES

A.  Maximum Penalty.  The maximum penalty for wire fraud under 18 U.S.C. § 1343 is a twenty-year prison sentence, a fine of $250,000, or both.

B.  Factors Under 18 U.S.C. § 3553.  The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence. However, the

11

statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

  C. <u>Parole Abolished</u>. The defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

  D. <u>Supervised Release</u>. In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release not to exceed three years. 18 U.S.C. § 3583(b)(2). Supervised release is a period of time after release from prison during which the defendant will be subject to various restrictions and requirements. If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum prison sentence of twenty years.

  E. <u>Special Assessment</u>. The defendant will pay a $100.00 special assessment per count at the time of sentencing.

## VIII. POSITIONS REGARDING SENTENCE

Based on the circumstances of this case, the United States reserves the right to recommend any sentence up to 33 months, unless the defendant commits any act that could result in a loss of the downward adjustment for acceptance of responsibility. The defendant acknowledges that the Court does not have to follow that recommendation. The defendant also acknowledges that the Court does not have to grant a downward departure based on the defendant's substantial assistance to the United States, even if the United States chooses to file a motion pursuant to 18 U.S.C. § 3553(e)(1), USSG § 5K1.1, or Fed. R. Crim. P. 35. This Plea Agreement does not require the United States to file any pre or

post sentence downward departure motion under USSG §5K1.1 or Fed. R. Crim. P. 35. Notwithstanding the agreement to recommend a sentence within the applicable range, the United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

The defendant may request a sentence below the Sentencing Guidelines range as calculated in this Plea Agreement pursuant to 18 U.S.C. § 3553 from any sentence the Court may impose, and the United States may oppose it.

## IX. RESTITUTION

In exchange for benefits received under this Plea Agreement, the defendant agrees to pay restitution in the amount of $249,900, unless the Court determines that it will be impracticable for restitution to be paid. *See* 18 U.S.C. § 3663A(c)(3). In that case, the defendant agrees to pay a fine in the amount of $249,900, even if the amount would be an upward variance from the sentencing guideline range.[1] The defendant cannot discharge his restitution obligation through bankruptcy proceedings. The defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## X.   FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay. The defendant will surrender assets he obtained directly or indirectly as a

---

[1] The sentencing guideline range for an offense level 16 is $10,000 to $95,000. USSG § 5E1.2(c)(3).

13

result of his crime, and will release funds and property under his control in order to pay any fine, or restitution ordered by the Court.

## XI. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A. <u>Plea Agreement and Decision to Plead Guilty</u>. The defendant acknowledges that:

    1. He has read this Plea Agreement and understands its terms and conditions;

    2. He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

    3. He has discussed the terms of this Plea Agreement with his attorney;

    4. The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

    5. He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened his to enter into this Plea Agreement.

B. <u>Waiver of Appeal and Post-Conviction Proceedings</u>. The defendant knowingly and expressly waives: (a) the right to appeal any sentence of 33 months or less; (b) the right to appeal the manner in which the Court determined that sentence on the

14

grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Guidelines range determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. <u>Removal/Deportation Consequences</u>. The defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.

## XII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

NICHOLAS A. TRUTANICH
United States Attorney

3/4/19
DATE

*/s/ Daniel R. Schiess*
Daniel R. Schiess
Assistant United States Attorney

March 3, 2019
DATE

*/s/ Kelvin Atkinson*
Kelvin Atkinson
Defendant

3/3/19
DATE

*/s/ Richard A. Wright*
Richard A. Wright
Counsel for Defendant Atkinson