Wright Marsh & Levy
Richard A. Wright, Esq.
Nevada Bar No. 886
Sunethra Muralidhara, Esq.
Nevada Bar No. 13549
300 S. Fourth Street, Suite 701
Las Vegas, NV 89101
Phone: (702) 382-4004
Fax: (702) 382-4800
rick@wmllawlv.com
smuralidhara@wmllawlv.com

Attorneys for Kelvin Atkinson

United States District Court

District of Nevada

| | |
|---|---|
| United States of America, | Case No.  2:19-CR00055-JCM-CWH |
| Plaintiff, | |
| v. | Status Report and Proposed Language for Modification of Sentence in Response to Court Order ECF 33 |
| Kelvin Atkinson, | |
| Defendant. | |

Defendant, Kelvin Atkinson ("Mr. Atkinson"), by and through his attorneys of record, Richard A. Wright, Esq., and Sunethra Muralidhara, Esq., Wright Marsh & Levy, provide this Status Report and Proposed Language for Modification of Sentence in Response to Court Order ECF 33 for the Court's consideration.

## I.     Status Report

On Friday, March 27, 2020, Mr. Atkinson filed an emergency motion to modify sentence.  ECF 28.  On April 2, 2020, Mr. Atkinson was able to formally submit his application for relief to the Warden of his facility.  On April 9, 2020, Mr. Atkinson communicated with the Warden of his facility requesting a status update on his application.  Mr. Atkinson received a

response from the Warden on April 10, 2020 and provided the response to the undersigned. Mr. Atkinson reports the Warden's response as follows:

> The Regional Office has compromised a listing of those inmates who are now to be considered for Reduction in Sentence (RIS), Compassionate Release, and reconsideration of RRD time as a result of COVID-19. This list is our priority. As time permits, those who have not already been identified as "eligible" for this will be reviewed and considered.

Mr. Atkinson explains that he is not sure what "list" the Warden is referring to and it is unknown whether Mr. Atkinson is on this particular list in spite of submitting his application to the Warden.[1] He also explains that other inmates received the same response from the Warden. To date, undersigned counsel has not received any response from the BOP regarding Mr. Atkinson's application.

## II.    Proposed Language for Modification of Sentence

Many defendants across the county have been requesting release under compassionate care given the COVID-19 pandemic and each person's unique medical conditions. Similarly, courts have modified defendants' sentences differently and, on a case-by-case basis used various types of language. Mr. Atkinson provides the following proposed language for modification of his sentence and then provides other examples to the Court for comparison.

### A.    Mr. Atkinson's Proposed Modification Language

- Mr. Atkinson's emergency motion for to modification of sentence under 18 U.S.C. § 3582(c)(1)(A)(i), the CARES Act, CDC Guidelines, Attorney General Barr's memoranda, and 18 U.S.C. § 3553(a) is granted;

---

[1] Counsel's best judgment as to what the Warden's response means, is that BOP created a list of eligible inmates pursuant to the CARES Act rather than compassionate release. This list most likely contains eligible inmates for home confinement given certain factors such as their age, COVID-19 risk factors identified by the CDC, security level and whether they have a verifiable release plan. This is not an all-inclusive list of factors.

2

- Mr. Atkinson's sentence of imprisonment is modified to credit for time served. However, the remaining portion of the original term of imprisonment (as calculated by the BOP), shall be served as supervised release with the special condition that he shall be subject to home incarceration without the requirement of electronic monitoring for the time-being.  He shall serve 3-years of supervised release as originally imposed.

- Upon his release, Mr. Atkinson shall self-quarantine at home for an additional 14-day period. The BOP is directed to communicate with Mr. Atkinson's counsel to arrange transportation by one of Mr. Atkinson's familial members to pick up Mr. Atkinson as his facility to decrease possible exposure.  Mr. Atkinson must be released within 24 hours of issuance of this Order.

- Defendant is restricted to his residence at al times (home incarceration) except for medical necessities and or other activities specifically approved by U.S. Probation or this Court.  He does not need to report to U.S. Probation within 72 hours of release from imprisonment, but shall contact U.S. Probation via telephone within 72 hours of his release to check-in.

- Given the COVID-19 pandemic, the current standard and special conditions originally imposed mandating that Mr. Atkinson work at least 30 hours per week at a lawful type of employment and participate in community service is temporarily suspended.

- All other conditions of supervision originally imposed will remain in effect.

Mr. Atkinson requests the above proposed language.  Of note, Mr. Atkinson reports to counsel that USP Atwater and its satellite camp, where Mr. Atkinson is located, has been on a

3

lock-down since April 1, 2020. Given this, he requests that he serve any additional self-quarantine at his residence.

### B.   Other Courts' Examples of Sentence Modification Language

1. *United States v. Daniel Hernandez*, 1:18-cr-00834-PAE, (S.D.N.Y. Apr. 2, 2020)

In the famous Tekashi 6ix9ine case, the court had originally sentenced the defendant to 24 months in custody.  His current prison term was set to expire on August 1, 2020.  The Court concluded that it found "extraordinary and compelling reasons warranting reduction of [defendant's] sentence, that [he] did not pose a danger to the community, that the § 3553(a) factors do support a reduction of sentence, and that the reduction sought is consistent with the Sentencing Commission's policy statement, the Court grants [his] motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and orders his release.  The Court will, by separate order, set out the terms of Mr. Hernandez's release on home confinement for the first four months of his five-year term of supervised release."  *See United States v. Daniel Hernandez*, 1:18-cr-00834-PAE, ECF 451 (S.D.N.Y. Apr. 2, 2020). The Order is attached here as Exhibit A for this Court's consideration.

### 2.   *United States v. Morris Zukerman*, 16-cr-194-AT (S.D.N.Y. Apr. 5, 2020)

In *Zukerman*, the defendant was sentenced in March 2017 to 70 months in custody.  *See Id*. at 58.  He self-surrendered on May 20, 2017, and was released on April 5, 2020 after serving approximately 34 months in custody.   With regards to his motion for reduction in sentence, the Court originally ordered that his motion for modification of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) is granted only to the extent that:

> Zukerman's sentence is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration, without electronic monitoring and on such conditions as the Probation Department deems necessary, to be followed by the term of supervised release previously imposed by the Court. It is further ORDERED that Zukerman be released immediately to begin his term of home incarceration. Zukerman shall remain self-quarantined

4

for 14 days after release. Upon release, Zukerman shall call Probation to schedule an appointment.

*See Id*. at ECF 116, attached as Exhibit B.

Two days later, the Court issued a modified Order and stated:

Zukerman's sentence of imprisonment is modified to time served. However, the remaining portion of the original term of imprisonment (as calculated by the BOP), shall be served as supervised release with the special condition that Zukerman shall be subject to home incarceration— the most restrictive form of home confinement—without the requirement of electronic monitoring, followed by the one-year term of supervised release imposed in the original sentence. Upon his release, Zukerman shall self-quarantine at home for a 14-day period. The BOP is directed to release Zukerman <u>immediately</u>.

*See Id*. at ECF 119, attached as Exhibit C.

This modified order came after the BOP expressed that the Court's original order, as written, mandated that the defendant be held in self-quarantine at the BOP rather than self-quarantine at his residence.  *See Id*. ECF 117.  The government then responded, agreeing with the defendant and providing the appropriate language for the Court to implement that would trigger BOP's immediate release of the defendant.   The Court agreed with the parties' representations.  *See Id*. at 118.  The proposed language was ultimately ordered by the court, ECF 119, and the defendant was immediately released.

**3.  *United States v. Kirk Brannan*, 4:15-cr-00080 (S.D. TX Apr. 3, 2020)**

Defendant Brannan was originally sentenced to 36 months in custody on April 1, 2019. *See Id*. ECF 236; 240.  Defendant self-surrendered on June 18, 2019.  *Id*. at ECF 274.   After serving 9 months in custody, the defendant filed a motion for reduction of sentence.   The court granted the motion and issued an order with the following language, in part:

Defendant is re-sentenced to a term of credit for time-served in the Bureau of Prisons, followed by a term of THREE (3) YEARS of

1

2

> supervised release. The Bureau of Prisons is ORDERED to release
> defendant from its custody immediately.

3

4

*See Id.* at ECF 286, attached as Exhibit D.  Then an amended judgment of conviction was entered.  *Id.* at ECF 288.

5

### III.   Conclusion

6

7

8

9

10

11

12

13

14

Given the BOP has not yet adequately and promptly responded to Mr. Atkinson's application, and this Court's Order, ECF 33, Mr. Atkinson requests immediate consideration of his Emergency Motion to Modify Sentence.  He asserts that this Court has the requisite jurisdiction to consider his waiver and exhaustion of administrative procedures.  He asserts that he has exhausted his administrative procedures and alternatively the administrative procedures can be waived given extraordinary circumstances, which the Court should find here.  Should this Court agree that waiver is proper and/or exhaustion requirements have been met, he submits the above proposed sentence modification language and accordingly requests his immediate release to home confinement for the remainder of his sentence.

15

DATED this April 13, 2020.

16

17

Wright Marsh & Levy

18

19

20

By:   */s/ Richard A. Wright*
Richard A. Wright
Sunethra Muralidhara
Attorneys for Kelvin Atkinson

21

22

23

24

25

26

6

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of Wright Marsh & Levy and is a person of such age and discretion as to be competent to serve papers.  That on **April 13, 2020**, she served an electronic copy of the above and foregoing **Status Report and Proposed Language  for Modification of Sentence in  Response to Court Order ECF 33** by electronic service (ECF) to the person named below:

NICHOLAS A. TRUTANICH
United States Attorney District of Nevada
Daniel Schiess
Mark Woolf
Summer Allegra Johnson
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101

*/s/ Debbie Caroselli*
Employee Wright Marsh & Levy

7

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

DANIEL HERNANDEZ,

Defendant.

18 Cr. 834-04 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defense counsel seeking compassionate release, pursuant to 18 U.S.C. § 3582(c), for defendant Daniel Hernandez, in light of the heightened risk that the COVID-19 pandemic presents for him.  Dkt. 445.  The Government does not oppose this request.  Dkt. 448.

As background, Hernandez has been in prison since November 2018.  He was sentenced on December 18, 2019, to, *inter alia*, a 24-month term of imprisonment.  The Bureau of Prisons ("BOP") has calculated that, with credit for good behavior, Mr. Hernandez's prison term will end approximately August 1, 2020.

On March 22, 2020, defense counsel first sought a modification of Mr. Hernandez's sentence on grounds relating to the COVID-19 pandemic.  Dkt. 437.  Counsel asked the Court to modify Mr. Hernandez's sentence to enable him serve the remaining four-plus months of his prison term in home confinement.  *Id.* at 1.  Counsel explained that doing so would reduce the risk that Mr. Hernandez, who suffers from asthma, would contract COVID-19 while in prison. *See id.* at 1–2.

On March 25, 2020, the Court issued an order denying Mr. Hernandez's application for release, solely on the ground that the Court then lacked legal authority to modify his sentence. Dkt. 440. The Court noted that the sources of authority that courts (including this Court) have recently invoked to release from custody prisoners with heightened health risks from COVID-19 who have not yet been sentenced are not available in Mr. Hernandez's case, because he has already been sentenced. *Id.* at 1. Further, the Court noted, Federal Rule of Criminal Procedure 35, which permits modification of a prison sentence under specified circumstances, does not apply to Mr. Hernandez's case. *Id.* at 2. Neither does 18 U.S.C. § 3622(a), which allows the BOP, not the Court, to grant temporary release in defined circumstances. *Id.* Relevant here, the Court also identified as a potential source of authority to order a prisoner's early release the compassionate release statute, 18 U.S.C. § 3582(c), but concluded that it, too, did not apply, because the statute permits a court to reduce a prisoner's sentence only after he or she has exhausted his or her remedies through the BOP. *Id.* As of that date, Mr. Hernandez had not sought any relief through the BOP, let alone exhausted his administrative remedies. *See id.* at 2.

Although constrained to deny Mr. Hernandez's motion, the Court, in its March 25, 2020 order, did, however, communicate to the BOP—as the entity with authority to reduce Mr. Hernandez's sentence—that a sentence reduction was clearly merited given the risk to Mr. Hernandez's health presented by his continued incarceration: The Court wrote:

> The Court . . . is prepared to state the following, as it may be instructive guidance to the Bureau of Prisons in considering an application by Mr. Hernandez for release on home confinement. The Court's judgment at sentencing was that the [18 U.S.C.] § 3553(a) factors required imposition of the sentence imposed. And based on the same assessment, the Court later rejected Hernandez's motion to modify his sentence to substitute home confinement for the balance of his term of imprisonment, Dkt. 409, on the grounds that such a modification "would disserve the assembled 18 U.S.C. §3553(a) factors, including that Mr. Hernandez's sentence reflect the seriousness of his crimes." Dkt. 411. At the time of sentencing, however, the Court did not know and could not have known that the final four

2

months of Mr. Hernandez's sentence would be served at a time of a worldwide pandemic to which persons with asthma, like Mr. Hernandez, have heightened vulnerability. Section 3553(a) instructs a sentencing court to consider, *inter alia*, the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. §3553(a). Had the Court known that sentencing Mr. Hernandez to serve the final four months of his term in a federal prison would have exposed him to a heightened health risk, the Court would have directed that these four months be served instead in home confinement.

Dkt. 440 at 2–3.

Circumstances have since changed. On March 26, 2020, the day after the Court's order, defense counsel for the first time submitted a request to the BOP, pursuant to § 3582(c) and 28 C.F.R. § 571.61, seeking compassionate release of Mr. Hernandez, due to the unforeseeable and extraordinary circumstances created by the COVID-19 public health emergency and the special risks for him given his medical condition. *See* Dkt. 445-1. And today, April 1, 2020, the BOP, confirmed, in a letter from Associate General Counsel Zachary Kelton, that it has denied Mr. Hernandez's request, not because Mr. Hernandez has been found undeserving of compassionate release, but because the BOP is structurally incapable of assessing his circumstances. Dkt. 447-1. Specifically, Mr. Kelton explained that because Mr. Hernandez is in the custody of the United States Marshals at a private facility—not in the custody of the BOP— the BOP "cannot evaluate him for compassionate release and will not be seeking a motion for compassionate release on his behalf at this time." *Id.*

The defense asserts, and the Government agrees, that, as a result of this denial, Mr. Hernandez has exhausted his administrative remedies through the BOP. *See* Dkt. 445 at 1; Dkt. 448 at 1. The Court agrees that Mr. Hernandez has exhausted his remedies within the BOP with respect to compassionate release. Mr. Hernandez's application for relief under § 3582(c) is therefore ripe for this Court's review.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, --- F. Supp. 3d ---, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[1] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § 1B1.13(2)–(3).

It is readily apparent—and the Court here finds—that the circumstances presented here are extraordinary and compelling so as to justify compassionate release in Mr. Hernandez's case.

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *Ebbers*, 2020 WL 91399, at *1, 4.

The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. COVID-19 presents a heightened risk for incarcerated defendants like Mr. Hernandez with respiratory ailments such as asthma. The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease.[2] Further, the crowded nature of municipal jails such as the facility in which Mr. Hernandez is housed present an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[3] And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past two weeks, numerous courts, including this one, have ordered the temporary release from custody of inmates held in pretrial or presentencing custody. *See, e.g.*, *United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Hernandez*, No. 19 Cr. 169 (VM), 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020)

---

[2] *See People with Moderate to Severe Asthma*, Ctrs. for Disease Control and Prevention (Mar. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

(granting bail application, pursuant to § 3142(i), of 64-year-old defendant with asthma and high blood pressure that placed him "at a substantially heightened risk of dangerous complications should he contract COVID-19"); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).  And while the requirement of administrative exhaustion appears thus far to have limited the number of cases in which defendants serving their sentences have obtained compassionate relief from a court under § 3582(c)(1)(A)(i), at least two courts, finding administrative exhaustion, have resolved such a claim and granted such relief.  *See United States v. Muniz*, No. 4:09-Cr-0199-1, 2020 WL 1540325 (KPE), at *1–2 (S.D. Tex. Mar. 30, 2020) (finding extraordinary and compelling reasons under § 3582(c)(1)(A)(i) in light of heightened risk to inmate presented by COVID-19); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829 (LGS), at *3 (S.D.N.Y. Mar. 27, 2020) (same); *cf. United States v. Perez*, No. 17 Cr. 513 (AT), Dkt. 98 at 2, 6–7 (finding extraordinary and compelling reasons under § 3582(c)(1)(A) and waiving requirement of exhaustion of administrative remedies).

The Court accordingly finds that, in light of the heightened medical risk presented to Mr. Hernandez by the COVID-19 pandemic, there are extraordinary and compelling reasons to reduce Mr. Hernandez's sentence in the manner requested—to wit, releasing Mr. Hernandez from custody and requiring him to serve his first four months of supervised release in home confinement, on specified conditions.

This conclusion is supported by the application of the § 3553(a) factors. Mr. Hernandez has served 17 months in federal custody—the substantial majority of his prison sentence. And although the § 3553(a) factors (particularly the seriousness of Mr. Hernandez's racketeering and related offenses) earlier led the Court to require that Mr. Hernandez serve his entire sentence (net of statutory good time) in prison, § 3553(a) requires a sentencing court consider the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). Viewed now in the light of a raging and virulent pandemic that has entered federal prisons in New York City and that poses a special risk to Mr. Hernandez's health, these factors, together, now counsel allowing him to be released and serve his first four months of supervised release in home confinement. For reasons including those set out at length at Mr. Hernandez's sentencing, the Court is, further, persuaded that Mr. Hernandez—having been prosecuted, pled guilty, and publicly cooperated against members of the gang, the Nine Trey Gangsta Bloods, in concert with whom his violent acts were committed—no longer will present a meaningful danger to the community if at liberty. And the conditions of Mr. Hernandez's forthcoming home confinement will meaningfully restrict his freedom of movement during the next four months.

Accordingly, finding that extraordinary and compelling reasons warranting a reduction of Mr. Hernandez's sentence, that Mr. Hernandez does not pose a danger to the community, that the

§ 3553(a) factors now support a reduction of sentence, and that the reduction sought is consistent with the Sentencing Commission's policy statement, the Court grants Mr. Hernandez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and orders his release. The Court will, by separate order, set out the terms of Mr. Hernandez's release on home confinement for the first four months of his five-year term of supervised release.

For persuasive reasons relating to security, the Government has asked the Court, in a letter properly filed under seal, to briefly delay the docketing of this order. Accordingly, the docketing of this order—and the Court's accompanying order setting out the terms of Mr. Hernandez's home confinement—is to be delayed until 4 p.m. on Thursday, April 2, 2020.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 1, 2020
New York, New York

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

            -against-

MORRIS E. ZUKERMAN,

                     Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/3/2020_____

16 Cr. 194 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Morris E. Zukerman, a prisoner serving his sentence at FCI Otisville ("Otisville"), moves for a reduction of his term of imprisonment under the federal compassionate release statute, codified at 18 U.S.C. § 3582(c)(1)(A). Def. Letter, ECF No. 112. He asks that he be "transferred to supervised release with a special condition of home confinement for the duration of his sentence." *Id.* at 1. For the reasons stated below, Zukerman's motion is GRANTED only to the extent that his sentence is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration.

## BACKGROUND

On June 27, 2016, Zukerman pleaded guilty to one count of tax evasion and one count of corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws in violation of 26 U.S.C. §§ 7201 and 7212(a). *See* June 27, 2016 ECF entry. On March 21, 2017, the Court sentenced him to 70 months of incarceration followed by one year of supervised release. ECF No. 58. The Court also imposed a fine of $10,000,000 and ordered that $37,574,951.88 be paid in restitution. *Id.*; *see also* ECF No. 59. Zukerman surrendered to Otisville on June 26, 2017, and he has paid the fine and restitution in full. Def. Letter at 1–2; ECF No. 109. Because Zukerman began serving his sentence on June 26, 2017, "he was originally scheduled to be released in July 2022." Gov't Opp. at 1, ECF No. 114. Both parties acknowledge, however, that under the First Step Act,

Pub. L. No. 115-391, 132 Stat. 5194 (2018), Zukerman's term of imprisonment could be reduced, meaning that Zukerman could be released to home confinement as early as May 2021. Def. Letter at 2; Gov't Opp. at 4.

Zukerman is 75 years old and suffers from diabetes, hypertension, and obesity. Def. Letter at 1. He is currently serving his sentence at Otisville, where, as of March 27, 2020, at least one inmate has tested positive for COVID-19. *Id.*; *see also* COVID-19 Tested Positive Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. At Otisville, "120 inmates eat elbow-to-elbow at the same time, share one large bathroom with a handful of stalls and a handful of showers, and sleep together in bunks beds only a few feet apart that are divided principally between two dormitories (as opposed to individual cells)." Def. Letter at 3. "The two dormitories are separated only by the shared bathroom." *Id.* According to Zukerman, "[t]here is no place to self-isolate." *Id.* On March 31, 2020, the Federal Bureau of Prisons (the "BOP") directed that inmates in all institutions be confined to their cells for 14 days "to decrease the spread of the virus." Bureau of Prisons COVID-19 Action Plan: Phase Five (Mar. 31, 2020), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. At Otisville, however, there are no cells. Def. Reply at 3 n.2. Inmates, therefore, are quarantined to their dormitories and common areas. *Id.* Zukerman's doctor, Timothy Dutta, M.D., writes that, based on the Centers for Disease Control and Prevention (the "CDC") guidelines for COVID-19, Zukerman is in "the highest risk category for complications and death from the disease." *See* Dutta Letter, ECF No. 112-2.

On March 27, 2020, Zukerman submitted a request for compassionate release to Otisville's warden. *See* ECF No. 112-3. On March 30, 2020, having not yet received a response, Zukerman moved this Court to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. He states that the "risk COVID-19 poses to [his] health amounts to an

'extraordinary and compelling' circumstance that warrants transferring [him] to supervised release with a special condition of home confinement for the duration of his sentence." Def. Letter at 1.  The Government argues that Zukerman's motion should be denied for two reasons: first, because Zukerman has not exhausted his administrative remedies under § 3582(c)(1)(A), which requires that a defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass; and second, because Zukerman is not an appropriate candidate for release given the seriousness and duration of his offense.  Gov't Opp. at 1.

The Court disagrees.  First, the Court holds that Zukerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic.  Second, although the sentence imposed on Zukerman was wholly warranted, the Court holds that the threat posed by COVID-19, in light of his age and medical status, constitutes an extraordinary and compelling reason to modify Zukerman's sentence.

## DISCUSSION

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i)     extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

3

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i),

Zukerman must both meet the exhaustion requirement and demonstrate that "extraordinary

and compelling reasons" warrant a reduction of his sentence.  The Court addresses these

requirements in turn.

I.    Exhaustion

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly

enforced."  *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4,

2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks

and alterations omitted)).[1]  However, as this Court and others have held, the requirement of

completing the administrative process may be waived "if one of the recognized exceptions to

exhaustion applies."  *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y.

Apr. 1, 2020); *see United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr.

2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust

her administrative appeals during her remaining eleven days of imprisonment, and the potential for

serious health consequences, the [c]ourt waives the exhaustion requirement of Section

3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving

exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek

relief through the [BOP] administrative process would be futile").

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not

absolute."  *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503

---

[1] The Court need not decide whether § 3582(c)'s exhaustion requirement is a jurisdictional requirement or merely a mandatory claim-processing rule.  *See Monzon*, 2020 WL 550220, at *2 (describing split between courts on that question).

U.S. 140, 146–47 (1992)).[2]  There are three circumstances where failure to exhaust may be excused.  "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue."  *Id.*  Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief."  *Id.* at 119.  Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice."  *Id.*

All three of these exceptions apply here.  "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile.  Moreover, the relief the agency might provide could, because of undue delay, become inadequate.  Finally, and obviously, [Zukerman] could be unduly prejudiced by such delay."  *Washington*, 925 F.3d at 120–21; *see Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death"); *see also Perez*, 2020 WL 1546422, at *2–3 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the

---

[2] The Supreme Court has stressed that for "a statutory exhaustion provision . . . Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."  *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).  Even when faced with statutory exhaustion requirements, however, the Supreme Court has allowed claims to proceed notwithstanding a party's failure to complete the administrative review process established by the agency "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate," so long as the party presented the claim to the agency.  *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976).  That reasoning explains the Second Circuit's holding that even statutory exhaustion requirements are "not absolute."  *Washington*, 925 F.3d at 118.  Zukerman has presented his claim to the warden, *see* ECF No. 112-3, so the situation here is analogous.

vulnerable defendant contracting COVID-19).  Here, even a few weeks' delay carries the risk of catastrophic health consequences for Zukerman.  The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals.  *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and alterations omitted).  Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category.  But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion . . . should also be guided by the policies underlying the exhaustion requirement."  *Bowen*, 476 U.S. at 484. The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release."  132 Stat. 5239.  Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release.  18 U.S.C. § 3582(c)(1)(A)(i).  In Zukerman's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

The Court recently granted a motion for compassionate release in *United States v. Perez*, 2020 WL 1546422, at *3–4, where it held that waiver of the exhaustion requirement was justified. The Government argues that *Perez* is distinguishable because in that case, the inmate presented "unusual factors" that weighed in favor of his release, including that (1) he was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two

vicious beatings while he was incarcerated, (2) his three-year sentence was scheduled to end within days, and (3) the Government did not object on the merits to his release. Gov't Opp. at 4. These arguments are unavailing.

Here too, there are a number of factors that weigh in favor of Zukerman's release. First, it is undisputed that Zukerman is 75 years old and suffers from diabetes, hypertension and obesity. Def. Letter at 1. His doctor opines that Zukerman is in the "highest risk category for complications and death from the disease if infected." Dutta Letter; *see also Basank v. Decker*, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The Court takes judicial notice that, for people of advanced age, with underlying health problems, COVID-19 causes severe medical conditions and has increased lethality.") (citation omitted). Moreover, Zukerman's risk is heightened because of his environment; at Otisville, inmates live in close quarters, share one large bathroom with only a handful of stalls and showers, and eat elbow-to-elbow at three-foot wide tables in the dining hall. Def. Reply at 3. Such conditions make controlling the spread of COVID-19 more challenging and the risk to vulnerable inmates, such as Zukerman, that much greater. *See United States v. Rodriguez*, 03 Cr. 271-1, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) ("[P]risons are ill-equipped to prevent the spread of COVID-19 . . . the crowded conditions, in both sleeping areas and social areas, and the shared objects (bathrooms, sinks, etc.) . . . facilitate transmission." (citation omitted)).

Second, the fact that Zukerman's release is not scheduled to end "within days," Gov't Opp. at 4, misses the point and understates the gravity of the COVID-19 pandemic. Although Zukerman's original release date may be far off, the threat of COVID-19 is at his doorstep. And although the Government focuses on the potential differences between Perez and Zukerman, the Government fails to take into account the undisputed constants in their cases—they are both individuals with serious underlying illnesses who are (1) detained in jails where positive cases of the virus have been found,

7

and (2) unable to take adequate measures to protect themselves.

Accordingly, the Court holds that Zukerman's advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement.[3]

II.      Extraordinary and Compelling Reasons for Release

The Court also finds that Zukerman has set forth "extraordinary and compelling reasons" to modify his sentence, 18 U.S.C. § 3582(c)(1)(A)(i), because of the great risk that COVID-19 poses to an elderly person with underlying health problems.

The authority to define "extraordinary and compelling reasons" has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, comment n.1. *See United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4–5 (S.D.N.Y. Jan. 8, 2020). Two components of the definition are relevant. First, extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

Zukerman's age, combined with his diabetes, hypertension, and obesity, satisfy that requirement. According to the World Health Organization, the populations most at risk of suffering a severe form of the disease include "older people, and those with underlying medical problems like

---

[3] A number of courts have denied applications for sentence modification under § 3582(c)(1)(A) brought on the basis of the risk posed by COVID-19 on the ground that the defendants failed to exhaust administrative remedies. *See, e.g., United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Hernandez*, No. 19 Cr. 834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020). But in several of those cases, the defendant was not in a facility where COVID-19 was spreading, and in none of them did the defendant present compelling evidence that his medical condition put him at particular risk of experiencing deadly complications from COVID-19. In this case, unlike those, Zukerman has established that enforcing the exhaustion requirement carries the real risk of inflicting severe and irreparable harm to his health.

cardiovascular disease [and] diabetes." Coronavirus, World Health Organization (Mar. 23, 2020), https://www.who.int/healthtopics/coronavirus#tab=tab_1. The CDC similarly has explained that individuals over the age of 65 and people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity, are at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (Mar. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html. And this risk for individuals like Zukerman is substantial; data recently released by the CDC indicates that approximately 80% of deaths from COVID-19 in the United States occur in individuals age 65 or older, and that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent. Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020, Centers for Disease Control and Prevention (Mar. 26, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. Given that inmates at Otisville live in close quarters, social distancing is impracticable if not impossible, making it difficult for Zukerman to protect himself from the spread of this dangerous and highly contagious virus.

This Court and others have held that compassionate release is justified under such conditions. *Perez*, 2020 WL 1546422, at *4; *see Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying . . . immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL 1627331, at *7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and abnormal liver enzymes in a pattern most consistent with non-

9

alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 . . . includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving compassionate release for defendant where his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

The Government argues that Zukerman is not an appropriate candidate for release considering the seriousness and duration of his criminal conduct. Gov't Letter at 4–5. The Court does not disagree that Zukerman's misconduct was egregious. As the Court observed at sentencing, "Zukerman evaded taxes totaling millions of dollars. He was driven not by need, but by unmitigated greed. He entangled himself in a web of lies and deceit, lying to his tax preparer, and then hiring lawyers to defend his lies. He went to such extraordinary lengths in order to cheat. These frauds were deliberate and calculated. Zukerman thought himself to be above the law." Sentencing Tr.,

Mar. 21, 2017, at 37, ECF No. 60. The severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to "include incurring a great and unforeseen risk of severe illness or death" brought on by a global pandemic. *Rodriguez*, 2020 WL 1627331, at *12.

Accordingly, the Court finds that Zukerman has demonstrated extraordinary and compelling reasons justifying a modification of his term of imprisonment.

## CONCLUSION

For the reasons stated above, Zukerman's motion for modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) is GRANTED only to the extent that: it is ORDERED that Zukerman's sentence is modified such that his remaining term of imprisonment is replaced by an equal period of home incarceration, without electronic monitoring and on such conditions as the Probation Department deems necessary, to be followed by the term of supervised release previously imposed by the Court. It is further ORDERED that Zukerman be released immediately to begin his term of home incarceration. Zukerman shall remain self-quarantined for 14 days after release. Upon release, Zukerman shall call Probation to schedule an appointment.

The Clerk of Court is directed to terminate the motion at ECF No. 112.

SO ORDERED.

Dated: April 3, 2020
     New York, New York

_____
       ANALISA TORRES
      United States District Judge

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

MORRIS E. ZUKERMAN,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/5/2020_____

16 Cr. 194 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On the application of the BOP, ECF No. 118, seeking clarification of the Court's order dated April 3, 2020 (the "April 3 Order"), ECF No. 116, it is ORDERED that the sentence imposed on Zukerman on March 21, 2017 (the "original sentence"), ECF No. 58, as modified by the April 3 Order, is further amended as follows:

Zukerman's sentence of imprisonment is modified to time served. However, the remaining portion of the original term of imprisonment (as calculated by the BOP), shall be served as supervised release with the special condition that Zukerman shall be subject to home incarceration— the most restrictive form of home confinement—without the requirement of electronic monitoring, followed by the one-year term of supervised release imposed in the original sentence. Upon his release, Zukerman shall self-quarantine at home for a 14-day period. The BOP is directed to release Zukerman <u>immediately</u>.

The Clerk of Court is directed to terminate the motions at ECF Nos. 117 and 118.

SO ORDERED.

Dated: April 5, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge

# EXHIBIT D

United States District Court
Southern District of Texas
**ENTERED**
April 02, 2020
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:15-CR-80-01 |
| | § | |
| KIRK LAWRENCE BRANNAN | § | |

## ORDER

Defendant's emergency motion for a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), is **GRANTED**.

Defendant is re-sentenced to a term of credit for time-served in the Bureau of Prisons, followed by a term of THREE (3) YEARS of supervised release. The Bureau of Prisons is **ORDERED** to release defendant from its custody immediately.

Defendant is **ORDERED** restricted to his residence at all times (home incarceration), except for medical necessities and court appearances or other activities specifically approved by the Court, for a period of TWELVE (12) MONTHS as a condition of supervised release. Defendant will be monitored by the form of location monitoring technology at the discretion of the probation office for that period of TWELVE (12) MONTHS, and he must follow the rules and regulations of the location monitoring program. Defendant must pay the costs of the program. The probation officer will initiate the monitoring program as soon as practicable and when deemed appropriate given the current COVID-19 outbreak. All other conditions of supervised release imposed in the judgment remain in effect.

SIGNED ON April 2, 2020.

Lee H. Rosenthal
United States District Judge