UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:19-CR-55 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| KELVIN ATKINSON, | |
| Defendant(s). | |

Presently before the court is Kelvin Atkinson's ("defendant") emergency motion to modify sentence. (ECF No. 28). The United States of America ("the government") filed a response (ECF No. 30) and supplement (ECF No. 31), to which defendant replied (ECF No. 32). Defendant then filed a status report. (ECF No. 34).

Also before the court is the government's motion for leave to file a supplemental response. (ECF No. 35). The government has already filed its supplemental response along with the Bureau of Prison's ("BOP") status report. (ECF Nos. 36; 37). Defendant replied to the government's belated response. (ECF No. 38).

**I.    Background**

As relevant to this motion, the court sentenced defendant to 27 months' custody on July 18, 2019. (ECF Nos. 20; 21). While defendant was incarcerated, the novel strain of coronavirus, COVID-19, has run rampant throughout the country and the world. While the court need not reiterate the well-known effects COVID-19 has had on day-to-day life, certain populations are particularly at risk of "severe illness" from the virus: the elderly, asthmatic, immunodeficient, and people with HIV. *See* Center for Disease Control, *People Who Are at Higher Risk for*

**James C. Mahan**
**U.S. District Judge**

*Severe Illness,* (April 2, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (*last accessed* April 8, 2020).

Defendant moves this court to commute his time of incarceration to home confinement "based upon his unique susceptibility to the COVID-19 infection . . . ." (ECF No. 28 at 2). The government opposes the motion because defendant has not exhausted his administrative remedies, as required by the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 30). The motion has been thoroughly briefed and, by the court's estimation, is now ripe for adjudication. (*See* ECF Nos. 28; 29; 30; 31; 32; 33; 34; 35; 36; 37; 38).

## II.  Legal Standard

"Even though courts ordinarily have the inherent authority to reconsider its prior orders, such authority does not exist when there is an "express rule to the contrary." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). One such contrary rule exists in the sentencing context: "A court generally may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)). Thus, the court may modify a sentence only when expressly authorized by statute.

The court is expressly authorized to modify a sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). However, courts may consider compassionate release only "upon motion of the Director of the Bureau of Prisons . . . ." *Id.* If a defendant wants to file such a motion with the court, he must fully exhaust his administrative remedies before doing so. *Id.* Since the enactment of the First Step Act, a defendant may file a compassionate-release motion if his application to the BOP goes unanswered for thirty days. *Id.*

To be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under USSG § 1B1.13, "extraordinary and compelling reasons" include, amongst other things, terminal illnesses and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the

**James C. Mahan
U.S. District Judge**

- 2 -

1  environment of a correctional facility and from which he or she is not expected to recover."
2  USSG § 1B1.13.

3  **III.    Discussion**

4  As an initial matter, the government belatedly responds to the substance of defendant's motion because it "believ[ed] that the applicable statute and case law required defendant to exhaust his administrative remedies before filing his motion with the [c]ourt." (ECF No. 35 at 1). Ordinarily, the court would not countenance the government's untimely response after it decided to put all of its proverbial eggs in the administrative-exhaustion basket. However, the COVID-19 pandemic is unprecedented, and the court—like the country—endeavors to find the best approach to this crisis. Accordingly, the government's motion for leave to file a supplemental response is granted. (ECF No. 35).

The government advances two arguments against releasing defendant: (1) the court must defer to the BOP because it does not have jurisdiction to entertain defendant's motion until the 30-day statutory period has elapsed; and (2) defendant "has the ability to care for himself" because there have not been any confirmed COVID-19 cases at FCP Atwater, where defendant is incarcerated. (*See* ECF Nos. 30; 31; 36; 37). The government does not argue that defendant is a danger to the community. *See generally id.*

To the first point, the government relies on a Third Circuit opinion in which the court held that "[g]iven BOP's shared desire for a safe and healthy prison environment . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" during the COVID-19 outbreak. (ECF No. 36 at 2–3, 7 (quoting *United States v. Raia,* No. 20-1033, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020). To its second point, the government submits a "BOP status report," which outlines procedures the BOP has taken to stymie the spread of COVID-19 through the federal prison system. (ECF No. 37-1).

*Raia* is not binding on this court, and the court is unconvinced that it should follow the Third Circuit's precedent. To the contrary, in light of COVID-19, "30 days is anything but 'exceptionally quick'—indeed, each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'" *United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL

James C. Mahan
U.S. District Judge

- 3 -

1673244, at *3 (S.D.N.Y. Apr. 6, 2020) (citations omitted).  Indeed, defendant aptly describes the spread of COVID-19 in the time it has taken to brief the instant motion.  (ECF No. 38 at 2–4).  Nationally, the number of COVID-19 cases has risen from 80,735 to 603,059.  *Id.* at 2–3.  In the penological context, the number of COVID-19 cases has risen from 10 inmates and 8 staff members across 13 facilities to 388 inmates and 201 staff members across 40 facilities.  *Id.* at 3–4.  In that time, 13 federal inmates have died.  *Id.*

Consequently, the court warned the government that it would consider defendant's motion, including his exhaustion arguments, if the warden of FCP Atwater failed to respond to defendant's application by April 13, 2020.  (ECF No. 33).  Defendant represents that he contacted the warden of his facility, who responded as follows:

> The Regional Office has compromised a listing of those inmates who are not to be considered for Reduction in Sentence (RIS), Compassionate Release, and reconsideration of RRD time as a result of COVID-19.  This list is our priority.  As time permits, those who have not already been identified as "eligible" for this will be reviewed and considered."

(ECF No. 34 at 2).  The response did not clarify what "list" the warden was referring to, whether defendant is on that list, or whether defendant has been "identified as 'eligible.'"  *Id.*  Nor does the government.  (*See* ECF Nos. 36; 37; 37-1).  The BOP status report is simply a letter from Michael Carvajal, Assistant Director of the Correctional Programs Division, to federal inmates generally.  (*See* ECF No. 37-1).  Mr. Carvajal's letter is unrelated to defendant and his facility and makes absolutely no mention of compassionate release procedures.  *Id.*  Instead, the letter is largely just a reiteration of the BOP's COVID-19 Action Plan.  *Compare id.,* with Federal Bureau of Prison, *COVID-19 Action Plan*.[1]

Other courts throughout the country have noted the "obvious shortcomings" in the BOP's COVID-19 Action Plan: "First, testing inside prisons has been scant except for people who self-report symptoms—which means that statistics about the number of infections already in BOP facilities are largely meaningless.  And second, the plan provides no additional protections for

---

[1] *Available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited Apr. 14, 2020).

high-risk individuals." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote citation omitted).  The *Esparza* court further noted that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *Id.* (citing Centers for Disease Control and Prevention, *What Law Enforcement Personnel Need to Know about Coronavirus Disease 2019, COVID-19*).[2]

The government summarily contends that "defendant has not shown that his medical condition substantially diminishes his ability to care for himself at this time." (ECF No. 36 at 9). The government further argues that "he has access to effective cleaning products and has been encouraged by BOP to keep himself and his area clean." *Id.*

The court finds, as the *Esparza* court did, that "[t]he presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means." *Esparza*, 2020 WL 1696084, at *3.  In *Esparza*, the defendant seeking compassionate release was an elderly inmate who suffered from a variety of maladies that put him at increased risk of contracting COVID-19. *See generally id.*  There, the court noted as follows:

> [T]he prison environment prevents [defendant] from being able to effectively self-isolate in the ways the CDC recommends for a person of his age and diminished health. In this moment, the inability for high risk individuals to fully self-isolate is an inability to provide self-care. So long as [defendant] remains in custody, his capacity to protect himself from a serious, or even fatal, infection will be compromised.

*Id.*

So, too, here.  Defendant suffers from a severe illness that puts him at risk of contracting COVID-19 and, should he contract the virus, acutely suffering therefrom.  (ECF No. 28). Although the government contends that, as a matter of policy, defendant has ample cleaning supplies, defendant's experience at FCP Atwater tells a different story.  (*Compare* ECF No. 36 at 8–9, *with* ECF No. 38 at 5–6).  Defendant represents that "no one has given him cleaning

---

[2] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-law-enforcement.html (last visited Apr. 14, 2020).

products—Lysol, bleach, or hdqC 2," that "he has not seen extra efforts of staff members making rounds to disinfect or take inmates' temperatures to see if anyone has a fever," and that "social distancing practices are not being adhered to." (ECF No. 38 at 5). These are precisely the CDC guidelines that, the *Esparza* court noted may, "even in the best run prisons," be "difficult if not impossible to follow."

Accordingly, the court grants defendant's emergency motion. The court finds that defendant has exhausted his administrative remedies because he filed an application with the warden, followed up with the warden for a determination or status report, and received a generic response that did not indicate any action was being regarding his application. (ECF No. 34 at 2). The court further finds that modification of defendant's sentence is necessary on the facts of his case because he indisputably has a preexisting medical condition that makes him particularly susceptible to COVID-19.[3] (*See generally* ECF No. 28).

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's emergency motion to modify sentence (ECF No. 28) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's sentence of imprisonment be, and the same hereby is, MODIFIED from 27 month's incarceration to CREDIT FOR TIME SERVED.

IT IS FURTHER ORDERED that defendant shall be released within 72 hours of this order. Upon his release, defendant shall self-quarantine at home for an additional 14-day period.

IT IS FURTHER ORDERED that defendant's counsel shall, within 24 hours of this order, contact the BOP to arrange transportation. Defendant shall be picked up at FCP Atwater by one of his family members to decrease possible exposure.

IT IS FURTHER ORDERED that defendant shall serve the remaining portion of the original term of imprisonment (as calculated by the BOP) as supervised release with the special

---

[3] The court notes, however, that defendant's counsel mischaracterizes his physician's opinion. (ECF No. 28 at 2, 19). While counsel indicates that "death would be imminent" if defendant contracted COVID-19, *id.* at 2, his physician opined that the virus "**could** result in [defendant's] death . . .," *id.* at 19 (emphasis added). The court assumes that this mischaracterization was unintentional.

**James C. Mahan**
**U.S. District Judge**

condition that he shall be subject to home incarceration without the requirement of electronic monitoring for the time being.

IT IS FURTHER ORDERED that defendant shall not be required to report to the U.S. Probation Office in person. However, within 72 hours of his release, defendant shall contact the U.S. Probation Office by telephone to check in.

IT IS FURTHER ORDERED that defendant shall be restricted to his residence at all times (home incarceration) except for medical necessities and or other activities specifically approved by U.S. Probation or this court.

IT IS FURTHER ORDERED that defendant shall serve 3 years of supervised release as originally imposed.

IT IS FURTHER ORDERED that, in light of the COVID-19 pandemic, the current standard and special conditions originally imposed mandating that defendant work at least 30 hours per week at a lawful type of employment and participate in community service is temporarily suspended.

IT IS FURTHER ORDERED that all other conditions of supervision originally imposed shall remain in effect.

DATED April 17, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**